IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GARY CHEDWICK, | ) | |
| Individually, and on behalf of a group | ) | |
| of similarly situated individuals, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07-806 |
| | ) | |
| UPMC d/b/a UNIVERSITY OF | ) | |
| PITTSBURGH MEDICAL CENTER, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

Before the Court for disposition are the DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (*Document No. 32*), the Defendant's Brief in Support of Motion for Partial Summary Judgment (*Document No. 33*), and the Plaintiff's Brief in Response to the Defendant's Motion for Partial Summary Judgment (*Document No. 35*). For the reasons that follow, the Defendant's Motion for Partial Summary Judgment will be denied.

**Procedural History[1] and Background**

The instant case was initially commenced on October 25, 2006, when Valentina Tish ("Tish") filed an amended complaint in class action against Magee-Women's Hospital ("Magee") of the University of Pittsburgh Medical Center ("UPMC"). CV-06-820, Doc. No. 11. The amended complaint, which followed the granting of a partial motion to dismiss in favor of Magee, was filed without leave of court. In the amended complaint, Tish purported to add Gary Chedwick ("Chedwick"), Barbara Fowler ("Fowler"), Gloria Hamlett ("Hamlett") and Terri Walsh ("Walsh") as plaintiffs and UPMC St. Margaret, UPMC Shadyside, UPMC Montefiore and UPMC corporate as defendants. *Id.* The UPMC entities filed a motion to strike the amended

---

[1] A more detailed discussion of the procedural history of this case appears in the Court's prior opinion of December 12, 2007. *Chedwick v. UPMC*, 619 F.Supp.2d 172, 174-178 (W.D.Pa. 2007). Only the portions of the procedural history directly relevant to the issue raised by UPMC's motion for partial summary judgment will be repeated in this opinion.

1

complaint on November 8, 2006, contending that Tish's right to amend her complaint "once as a matter of course" under Federal Rule of Civil Procedure 15(a) had terminated upon the Court's granting of the partial motion to dismiss, and that the complaint could be amended only with leave of court. CV-06-820, Doc. No. 13. They also filed an alternative motion to sever pursuant to Federal Rule of Civil Procedure 21, arguing that prejudice would result if all of the claims included within the amended complaint were to be litigated in a single action. *Id.*

On April 24, 2007, the Court filed a memorandum opinion which addressed the motions which had been filed by the UPMC entities. *Tish v. Magee-Women's Hospital*, Civil Action No. 06-820, 2007 WL 1221137, 2007 U.S. Dist. LEXIS 30130 (W.D.Pa. April 24, 2007). Although it was determined that Tish's right to amend her complaint without leave of court had terminated upon the granting of the partial motion to dismiss, the Court treated the filing of the amended complaint as a request for leave to amend and permitted the amendment. *Tish*, 2007 WL 1221137, at *5-6, 2007 U.S. Dist. LEXIS 30130, at *12-17. Nevertheless, in order to obviate the potential prejudice to the UPMC entities, the Court granted the alternative motion to sever. *Tish*, 2007 WL 1221137, at *6-8, 2007 U.S. Dist. LEXIS 30130, at *17-22. Because the claims asserted in the amended complaint were based on alleged violations of the Americans with Disabilities Act of 1990 ("ADA") [42 U.S.C. § 12101 *et seq.*] and the Rehabilitation Act of 1973 ("Rehabilitation Act") [29 U.S.C. § 701 *et seq.*], the Court reasoned that the "fact-specific" and "individualized" nature of claims typically arising under those statutes counseled in favor of severance, which would eliminate the need for multiple UPMC entities to defend themselves from a myriad of claims asserted by several different plaintiffs in a single action. *Tish*, 2007 WL 1221137, at *6-7, 2007 U.S. Dist. LEXIS 30130, at *17-20.

Pursuant to the severance order, Chedwick commenced his own action against UPMC, in which he alleged violations of the ADA and the Rehabilitation Act.[2] Doc. No. 1. His complaint, which was filed on June 15, 2007, included class action averments brought on behalf of a

---

[2] Title I of the ADA is Commerce Clause legislation which prohibits disability-based discrimination by employers engaged in industries affecting interstate commerce. 42 U.S.C. § 12111(5)(A). Section 504 of the Rehabilitation Act is Spending Clause legislation which prohibits certain recipients of federal financial assistance from engaging in disability-based discrimination. 29 U.S.C. § 794. The standards for determining whether an employer has violated the Rehabilitation Act are identical to the standards for determining whether an employer has violated the ADA. 29 U.S.C. § 794(d).

"proposed class consisting of all persons who ha[d] been terminated or separated from employment following a leave of absence and/or otherwise not accommodated by [UPMC's] failure to transfer to vacant and funded positions." *Id.*, ¶ 31. On August 28, 2007, UPMC filed a motion to dismiss Chedwick's complaint. Doc. No. 3. In support of its motion to dismiss, UPMC argued, *inter alia*, that Chedwick's class action averments were precluded by the terms of the severance. Doc. No. 4, pp. 11-16. The Court rejected this argument in a memorandum opinion dated December 12, 2007, by stating as follows:

> The Court acknowledges that it placed some reliance on the "fact-specific, individualized determinations" required under the ADA and the Rehabilitation Act in granting the Alternative Motion to Sever in *Tish*. *Tish*, 2007 WL 1221137, at *6, 2007 U.S. Dist. LEXIS 30130, at *17. As noted earlier, however, the Court's discussion about the ADA and the Rehabilitation Act was limited to the issue of prejudice. The Court did not hold that claims arising under the ADA and the Rehabilitation Act were *categorically* inappropriate for resolution within the context of a class action. Some ADA and Rehabilitation Act cases may properly be adjudicated as class actions. *Hohider v. United Parcel Service*, 243 F.R.D. 147 (W.D.Pa. 2007). Thus, the Court does not agree with the UPMC argument that Chedwick's averments fail to satisfy the requirements of Rule 23(a) as a matter of law. Doc. No. 4, p. 16.
> 
> Chedwick apparently believes that UPMC's corporate policies are not in compliance with the decision of the United States Court of Appeals for the Third Circuit in *Shapiro v. The Township of Lakewood*, 292 F.3d 356 (3d Cir. 2002). Doc. No. 6, p. 9. In *Shapiro*, the Court of Appeals made it clear that a plaintiff proceeding under the ADA pursuant to a "failure to transfer" theory is not necessarily required to establish that he or she formally applied for another position. *Shapiro*, 292 F.3d at 360-361. Chedwick alleges that UPMC requires its employees on disability leave to formally apply for vacant positions without regard to whether they are entitled to reasonable accommodations under the ADA and the Rehabilitation Act. Doc. No. 1, ¶ 33. It would be premature to dismiss Chedwick's class action averments at this early stage. The Court will deny UPMC's Motion to Dismiss with respect to these averments, since the issue of class certification will be more appropriately addressed when the record is more fully developed.

*Chedwick v. UPMC*, 619 F.Supp.2d 172, 189 (W.D.Pa. 2007)(emphasis in original).

On July 23, 2009, the United States Court of Appeals for the Third Circuit issued its decision in *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169 (3d Cir. 2009), which reversed a class certification that had been granted in the District Court decision cited in this Court's

opinion of December 12, 2007.  UPMC responded to the decision in *Hohider* by filing a partial motion for summary judgment on September 30, 2009, which seeks a determination that class certification under Federal Rule of Civil Procedure 23 is not appropriate in the instant case.  This motion is the subject of this memorandum opinion.

### Standard of Review

Federal Rule of Civil Procedure 56(c) reads, in pertinent part, as follows:

> The [summary] judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

In interpreting Rule 56(c), the United States Supreme Court has stated:

> The plain language . . . mandates entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).

An issue of material fact is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The court must view the facts in a light most favorable to the non-moving party, and the burden of establishing that no genuine issue of material fact exists rests with the movant.  *Celotex*, 477 U.S. at 323.  The "existence of disputed issues of material fact should be ascertained by resolving all inferences, doubts and issues of credibility against the moving party." *Ely v. Hall's Motor Transit Co.*, 590 F.2d 62, 66 (3d Cir. 1978) (*quoting Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir. 1972)).  Final credibility determinations on material issues cannot be made in the context of a motion for summary judgment, nor can the district court weigh the evidence.  *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632 (3d Cir. 1993); *Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co.*, 998 F.2d 1224 (3d Cir. 1993).

When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' -- that is, pointing out to the District Court -- that there is an absence of evidence to support the non-moving party's case." *Celotex*, 477 U.S. at 325. If the moving party has carried this burden, the burden shifts to the non-moving party, who cannot rest on the allegations of the pleadings and must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Petruzzi's IGA Supermarkets*, 998 F.2d at 1230. When the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249-250.

### Discussion

In support of its motion for partial summary judgment, UPMC advances a purely "legal argument" to the effect that class certification under Rule 23 is inappropriate in this case. Doc. No. 33, p. 1, n. 1. UPMC has not filed a concise statement of material facts in accordance with Local Rule 56(B)(1), nor has it filed an appendix in accordance with Local Rule 56(B)(3). Instead, UPMC bases its argument solely on the premise that the Court of Appeals' decision in *Hohider* forecloses class certification in cases brought by aggrieved employees or prospective employees under the ADA and the Rehabilitation Act. Doc. No. 33, pp. 3-6. Chedwick argues that UPMC reads *Hohider* too broadly, and that class certification in this case is not absolutely foreclosed by that decision. Doc. No. 35, pp. 1-6. Because UPMC relies only on an abstract legal argument without reference to the evidentiary record in this case, the Court's inquiry is limited to the narrow question of whether the *possibility* of class certification in this case is absolutely foreclosed by *Hohider*.[3]

At the outset, it is worth noting that the relevant question is not whether Chedwick's

---

[3] The Court notes that, in *Hohider*, both the District Court and the Court of Appeals had the benefit of a "voluminous record" when addressing the issue of class certification. *Hohider v. United Parcel Service, Inc.*, 243 F.Supp.2d 147, 156 (W.D.Pa. 2007). The matter was not adjudicated solely on the basis of pleadings and briefs. The Court of Appeals has recognized that where issues related to class certification are "enmeshed in the factual and legal issues comprising the plaintiff's cause of action," a court "may delve beyond the pleadings to determine whether the requirements for class certification are satisfied." *Beck v. Maximus, Inc.*, 457 F.3d 291, 297 (3d Cir. 2006), quoting *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 167 (3d Cir. 2001).

complaint precisely identifies a certifiable class, but rather whether is it conceivable that a class could be certified under the present circumstances. *Robidoux v. Celani*, 987 F.2d 931, 937 (2d Cir. 1993)("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly."); *In the Matter of: Monumental Life Insurance Co.*, 365 F.3d 408, 414 (5th Cir. 2004)("[H]olding plaintiffs to the plain language of their definition would ignore the ongoing refinement and give-and-take inherent in class action litigation, particularly in the formation of a workable class definition."). Courts possess the authority to limit or modify class definitions in order to provide the precision needed for class certification. *Harris v. General Development Corp.*, 127 F.R.D. 655, 659 (N.D.Ill. 1989)("While the class of deterred nonapplicants is too speculative to be certified as a class, it is certainly within this court's discretion to limit or redefine the scope of the class."); *Meyer v. Citizens & Southern National Bank*, 106 F.R.D. 356, 360 (M.D.Ga. 1985)(recognizing that a court's "discretion in ruling on a motion to certify a class" necessarily "extends to defining the scope of the class"). Thus, in determining whether UPMC is entitled to summary judgment with respect to the issue of class certification, the Court's consideration is not inevitably limited to the proposed class definition contained in Chedwick's complaint. Doc. No. 1, p. 5, ¶ 31.

   The scope of the Court of Appeals' holding in *Hohider* can only be understood by reference to the judicial precedents upon which it was based. In *Franks v. Bowman Transportation Co., Inc.*, 424 U.S. 747, 772-773 (1976), the United States Supreme Court recognized that, in a class action involving alleged violations of Title VII of the Civil Rights Act of 1964 ("Title VII") [42 U.S.C. § 2000e *et seq.*], a showing that an employer has engaged in a statutorily-proscribed "pattern or practice" of discrimination can constitute a *prima facie* showing that the employer has unlawfully discriminated against individual class members, thereby leaving the employer with the burden of demonstrating that particular individuals were not *themselves* victims of illegal discrimination. The Supreme Court later found the reasoning in *Franks* to be applicable to "pattern or practice" cases brought by the Federal Government against offending employers pursuant to 42 U.S.C. § 2000e-6. In *International Brotherhood of Teamsters v. United States*, 431 U.S. 324 (1977), the Supreme Court explained:

Although not all class actions will necessarily follow the *Franks* model, the nature of a pattern-or-practice suit brings it squarely within our holding in *Franks*. The plaintiff in a pattern-or-practice action is the Government, and its initial burden is to determine that unlawful discrimination has been a regular procedure of policy followed by an employer or group of employers. See *supra*, at 336, and n. 16. At the initial, "liability" stage of a pattern-or-practice suit the Government is not required to offer evidence that each person for whom it will ultimately seek relief was a victim of the employer's discriminatory policy. Its burden is to establish a prima facie case that such a policy existed. The burden then shifts to the employer to defeat the prima facie showing of a pattern or practice by demonstrating that the Government's proof is either inaccurate or insignificant. An employer might show, for example, that the claimed discriminatory pattern is a product of pre-Act hiring rather than unlawful post-Act discrimination, or that during the period it is alleged to have pursued a discriminatory policy it made too few employment decisions to justify the inference that it had engaged in a regular practice of discrimination.

If an employer fails to rebut the inference that arises from the Government's prima facie case, a trial court may then conclude that a violation has occurred and determine the appropriate remedy. Without any further evidence from the Government, a court's finding of a pattern or practice justifies an award of prospective relief. Such relief might take the form of an injunctive order against continuation of the discriminatory practice, an order that the employer keep records of its future employment decisions and file periodic reports with the court, or any other order "necessary to ensure the full enjoyment of rights" protected by Title VII.

When the Government seeks individual relief for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief. The petitioners' contention in this case is that if the Government has not, in the course of proving a pattern or practice, already brought forth specific evidence that each individual was discriminatorily denied an employment opportunity, it must carry that burden at the second, "remedial" stage of trial. That basic contention was rejected in the *Franks* case. As was true of the particular facts in *Franks*, and as is typical of Title VII pattern-or-practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial. The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decisionmaking.

The proof of the pattern or practice supports an inference that any particular employment decision, during the period in which the discriminatory policy was in force, was made in pursuit of that policy. The Government need

> only show that an alleged individual discriminatee unsuccessfully applied for a job and therefore was a potential victim of the proved discrimination. As in *Franks*, the burden then rests on the employer to demonstrate that the individual applicant was denied an employment opportunity for lawful reasons. See 424 U.S., at 773 n. 32.

*Teamsters*, 431 U.S. at 360-362 (footnotes omitted). Although the framework discussed in *Teamsters* was formulated for "pattern or practice" suits brought by the Government pursuant to § 2000e-6, the Supreme Court later observed, in *Cooper v. Federal Reserve Bank of Richmond*, 467 U.S. 867, 876, n. 9 (1984), that the same framework could be utilized in private class actions brought under Title VII.

In *Hohider*, the District Court certified a nationwide class of employees alleging a pattern or practice of unlawful discrimination under Title I of the ADA. *Hohider v. United Parcel Service, Inc.*, 243 F.R.D. 147, 246 (W.D.Pa. 2007). The class was defined as follows:

> Those persons throughout the United States who:
> (i) according to the records of UPS, its agents and contractors, have been employed by UPS at any time since May 10, 2000, including those employees who were absent from work and were receiving either workers' compensation or short or long term disability insurance benefits; and
> (ii) have been absent from work because of medical reasons; and
> (iii)(A) did not return to work by reason of UPS's alleged 100% healed policy; or
> (B) did not return to work by reason of UPS's allegedly discriminatory implementation of its formal ADA compliance policy; or
> (C) did not return to work by reason of the allegedly discriminatory use by UPS of uniform pretextual job descriptions.
> Excluded from the Class are all presently working UPS management employees with supervisory authority over the formulation or implementation of the UPS policies and practices alleged in this action to violate the ADA.

*Id.* The class definition adopted by the District Court differed from that which had been proposed by the plaintiffs in that it did not require class members to be "disabled" *as defined under the ADA*. *Id.* at 154. The District Court determined that the individualized inquiries necessary for determining whether particular individuals were "disabled" under the ADA would render the plaintiffs' proposed class definition unworkable and, hence, unsuitable for certification

8

under Rule 23.[4]  *Id.* at 209.  The District Court evidently believed that the class could be certified for purposes of the "liability" stage of the *Teamsters* framework without reference to the ADA's substantive requirements, and that the individualized inquiries concerning particular plaintiffs' entitlement to statutory protection under the ADA could be delayed until the "remedial" stage.  *Id.* at 208, n. 69.

On interlocutory appeal pursuant to Federal Rule of Civil Procedure 23(f), the Court of Appeals reversed the order granting certification.  *Hohider*, 574 F.3d at 171.  The basis for this reversal centered on important differences between Title VII and the ADA.  Title VII makes it an "unlawful employment practice" for an employer "to fail or refuse to hire or to discharge *any*

---

[4]The relevant portions of Federal Rule of Civil Procedure 23 provide:
**Rule 23.  Class Actions**
**(a) Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
    (1) the class is so numerous that joinder of all members is impracticable;
    (2) there are questions of law or fact common to the class;
    (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
    (4) the representative parties will fairly and adequately protect the interests of the class.
**(b) Types of Class Actions.**  A class action may be maintained if Rule 23(a) is satisfied and if:
    (1) prosecuting separate actions by or against individual class members would create a risk of:
        (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
        (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;
    (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or
    (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  The matters pertinent to these findings include:
        (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
        (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
        (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
        (D) the likely difficulties in managing a class action.
FED. R. CIV. P. 23(a)-(b).

*individual*, or otherwise to discriminate against *any individual* with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1)(emphasis added). "This statutory provision does not speak to qualification, but protects *all* individuals from discrimination motivated by the immutable characteristics specified in the statute." *Hohider*, 574 F.3d at 190 (emphasis added). In other words, no group of individuals is categorically excluded from statutory protection under Title VII.[5] The ADA, on the other hand, protects only *qualified* individuals from discrimination.[6] The term "qualified individual" is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."[7] 42 U.S.C. § 12111(8). The ADA's anti-discrimination provision provides that "[n]o covered entity shall discriminate *against a qualified individual* on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[8] 42 U.S.C. § 12112(a). Unlike Title VII, which

---

[5]Not every *employer* is subject to the provisions of Title VII. In order for Title VII's anti-discrimination provision to be applicable, an employer must fall within the definition of the term "employer" codified at 42 U.S.C. § 2000e(b). Nevertheless, every *individual* enjoys statutory protection from discrimination based on the statutory criteria enumerated in Title VII when he or she seeks or commences employment with a covered "employer." 42 U.S.C. § 2000e-2(a)(1).

[6]On September 25, 2008, President George W. Bush signed the ADA Amendments Act into law. Pub. L. No. 110-325; 122 Stat. 3553 (2008). This legislation, which took effect on January 1, 2009, broadened the category of individuals entitled to statutory protection under the ADA. In *Hohider*, the United States Court of Appeals for the Third Circuit declined to consider whether the statutory amendment should be applied retroactively, since the new legislation had not altered the meaning of the word "qualified" in the ADA. *Hohider v. United Parcel Service, Inc.*, 574 F.3d 169, 187, n. 16 (3d Cir. 2009). The Court expresses no opinion as to what effect, if any, the ADA Amendments Act may have on the issue of class certification in this case.

[7]Prior to this year, the ADA defined the term "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." Pub. L. No. 101-336, § 101; 104 Stat. 327, 331 (1990). The difference in the language between the old and new versions of the statute is not germane to the discrete issue presently before the Court.

[8]Prior to this year, the ADA's anti-discrimination provision provided as follows:
**§ 12112. Discrimination**
**(a) General rule.** No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

10

extends statutory protection to *all* individuals, the ADA extends statutory protection only to *qualified* individuals.

In *Hohider*, the Court of Appeals held that the District Court had erred in failing to incorporate the ADA's substantive requirements into its analysis at the "liability" stage of the *Teamsters* framework. *Hohider*, 574 F.3d at 196. The class, as defined in the District Court's certification order, was sufficiently broad to include both qualified and unqualified employees. *Hohider*, 243 F.R.D. at 246. The District Court apparently assumed that individualized inquiries concerning the qualifications of class members could be deferred until the "remedial" stage of the *Teamsters* framework, and that class certification was appropriate at the "liability" stage in a manner consistent with that sometimes employed in the Title VII context. *Id.* at 204-209. The Court of Appeals refuted the accuracy of this assumption by stating as follows:

> As under Title VII, inquiry into whether a plaintiff alleging disability discrimination under the ADA is qualified for the employment in question may be relevant to assessing whether that plaintiff has offered evidence sufficient to give rise to an inference that the employer discriminated against him on the basis of a statutorily protected characteristic. Unlike Title VII, however, the ADA explicitly incorporates this inquiry into its definition of prohibited discrimination, and thus generally requires evaluation of whether a disabled individual is "qualified" as defined under the statute to determine not only whether discrimination on the basis of disability has occurred, but more fundamentally, whether such discrimination against that individual is unlawful.

*Hohider*, 574 F.3d at 191-192 (citations omitted). Because a "pattern or practice" of unlawful discrimination under the ADA could be established only upon a showing that the employer in question had discriminated against "qualified" individuals, the Court of Appeals concluded that the District Court had erred in deferring consideration of the qualifications of the plaintiffs until the "remedial" stage of the *Teamsters* inquiry. *Id.* at 185-202.

Although the Court of Appeals highlighted the interaction between the ADA's substantive standards and Rule 23's certification requirements throughout its opinion, it did not hold that no ADA or Rehabilitation Act case could ever be prosecuted as a class action. *Id.* at

---

Pub. L. No. 101-336, § 102; 104 Stat. 327, 331-332 (1990). The difference in the language between the old and new versions of the statute is not germane to the discrete issue presently before the Court.

185-186 ("Rather, establishing the unlawful discrimination alleged by plaintiffs would require determining whether class members are 'qualified' under the ADA, an assessment that encompasses inquiries acknowledged by the District Court to be too individualized and divergent *with respect to this class* to warrant certification under Rule 23(a) and (b)(2).")(emphasis added); *Id.* at 196 ("Because the statutorily required inquiry into qualification is incompatible with the requirements of Rule 23 *in this case*, and because plaintiffs cannot adjudicate their claims and requested relief without it, the class cannot be certified.")(emphasis added); *Id.* at 203 ("For the foregoing reasons, we find the District Court abused its discretion in granting certification, and the class, *as defined*, cannot be certified under Rule 23(a) and (b)(2) with respect to its claims and requested relief.")(emphasis added). UPMC's argument that *Hohider* categorically precludes class certification in all ADA and Rehabilitation Act cases, without reference to the particular factual situations or class definitions at issue, simply paints with too broad of a brush. Indeed, the Court of Appeals implicitly recognized that a class could conceivably be certified in a case brought under these statutes. *Id.* at 189 ("The class, *as defined*, contains no unifying or limiting criteria–with respect to employment positions held or desired, for instance, or conditions suffered, or accommodations sought–that potentially would permit classwide evaluation of whether each member of the class is 'qualified' and thus can perform the essential functions of a given job with or without reasonable accommodation.")(emphasis added). Moreover, in a decision rendered a few weeks *after* the issuance of the *Hohider* decision, the Court of Appeals expressly declined to consider whether disability discrimination claims brought under the Rehabilitation Act were "categorically inappropriate for class action litigation." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 214 (3d Cir. 2009).[9] There would have been no reason for the Court of Appeals to leave this issue open if the question had already been settled in *Hohider*. The Court adheres to its previous determination that cases brought under the ADA and the Rehabilitation Act are not *categorically* beyond the purview of Rule 23. *Chedwick*, 619 F.Supp.2d at 189.

Chedwick contends that he can obtain class certification in a manner consistent with the

---

[9]*Fowler v. UPMC Shadyside*, Civil Action No. 07-807, like the instant case, resulted from this Court's severance order of April 24, 2007. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009).

requirements of Rule 23.[10]  Doc. No. 35, pp. 3-6.  The Court does not understand *Hohider* to foreclose that *possibility*.  Because UPMC's argument is premised on an overbroad reading of *Hohider*, without reference to the factual circumstances or evidentiary record of this case, the motion for partial summary judgment must be denied.  The Court expresses no opinion as to whether a class can ultimately be certified in this case.  If Chedwick moves for class certification, UPMC remains free to rely on *Hohider* in support of its opposition.  *Hohider* is certainly relevant to the ultimate inquiry concerning certification, and nothing in this opinion should be construed to indicate the contrary.  The Court holds only that *Hohider* does not absolutely foreclose the possibility that class certification may be appropriate in an ADA or Rehabilitation Act case such as this, and that "the issue of class certification will be more appropriately addressed when the record is more fully developed."  *Chedwick*, 619 F.Supp.2d at 189.  An appropriate order follows.

McVerry, J.

cc:     All counsel of record

---

[10] The Court expresses no opinion as to Chedwick's arguments concerning how he may be able to obtain class certification.  Doc. No. 35, pp. 3-6.